[No. D004990. Fourth Dist., Div. One. Nov. 30, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
EMILIO CEPRANO VALDEZ et al., Defendants and Appellants.

[Opinion certified for partial publication.[1]]

[1]Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of sections III-VI.

**800**

**COUNSEL**

Patrick Hennessey, Jr., and Inge Brauer for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Maxine Cutler and David Williams, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WORK, J.**—Jose Jacinto Torres appeals convictions of unlawfully possessing cocaine and unlawfully possessing cocaine for sale. (Health & Saf. Code, §§ 11351, 11350, subd. (a).) We hold the search of a 35-millimeter film canister in his pocket (which contained the cocaine) during a pat-search for weapons was unlawful and thus reverse his judgment of conviction. Because we find the search was unlawful, we do not address two other issues raised by Torres regarding the exclusion of a declaration against penal interest and comment on his post-arrest silence.

## I

### TORRES: FACTS

The drugs were found on January 10, 1986, during the execution of a search warrant at a yard used for storage and auto body repair by a man named Carmelo Beas. The affidavit in support of the arrest warrant stated that within the past five days (of the affidavit dated Jan. 3, 1986), an informant made a purchase of heroin from a man named "Carmelo" at the yard. The search warrant listed only that one individual, Carmelo Beas.

*The People's Version*

As Officer Gouge drove into the yard in an unmarked vehicle, Torres and a man named William Viruet Rayon[2] were standing at a side profile to the vehicle. (I.e., Torres and Rayon were facing east and the police vehicle was approaching from their right side.) Rayon and Torres were standing close to each other, with Rayon to Torres's left. Rayon and Torres turned and looked towards the vehicle. Officer Gouge kept his eyes on Torres the entire time. As Gouge exited the vehicle, he yelled, "Police officers with a search warrant." Torres and Rayon started turning away from the officers. Gouge continued to get out of his vehicle, yelled, "Police officers, put your hands up," and drew his gun since he could not see Torres's hands. Gouge started moving in Torres's direction and yelled again that he should put his hands up where he could see them.

Torres's right hand was out of Gouge's view from the elbow down. When asked on cross-examination if he was unable to see the hands of both Rayon and Torres, Gouge testified that he was not positive about Rayon, but for some reason his attention was drawn to Torres, whose hands were not in his view. Later, Officer Gouge was recalled as a witness after Torres had

---

[2] Officer Gouge thought the man's name was "Virnett."

testified. He testified that when he entered the yard, his primary concern was weapons and his second concern was the destruction of evidence. He was not concerned about Rayon because he could see Rayon's hands, whereas he could see Torres's left hand but not his right hand. He was asked by defense counsel if his earlier testimony was that he did not remember whether or not he saw Rayon's hands. Gouge answered that if he had not been able to see Rayon's hands, he would have been concerned about him also, which he was not. Gouge then asserted that Rayon's hands were down to his side, visible to him, and he did not see Rayon holding anything in them.

When Gouge was within two feet of the two men, he shouted that they should put their hands on the hood of a car that was parked near them, and they complied.

As Torres was standing with his hands on the hood, Gouge conducted a pat-down search for weapons, and he felt what he recognized as a 35-millimeter plastic film canister in Torres's right front pocket. He knew the object was not a weapon. Gouge saw no photography equipment anywhere in the area. Based on his 13 years of police experience and 5 years of narcotic experience, he believed there would be drugs in the canister. The watertight canisters are perfect storage containers for narcotics. He has found the canisters hundreds of times when executing search warrants, and if there is no photographic equipment, he has found that they either contain drugs or are empty.

Officer Gouge had his hand on the bulge in Torres's right front pocket, and he asked Torres, "What is this?" Torres removed the canister from his pocket and put it on the hood of the car. Officer Gouge asked him to open it. Torres responded, "You can open it if you want to." Officer Gouge opened the canister and found the cocaine.

*The Defense Version*

Torres testified he had been at the yard for about an hour working on his car's transmission with the permission of Carmelo.[3] He had just started talking to Rayon, who wanted to buy a car and was asking Torres about his car, when the police arrived. Rayon was standing by the fender of the car, about a foot away from him. As the police were arriving and before they exited their car, Rayon said, "The police," and as Torres turned, Rayon

---

[3] Torres testified the car was not driveable and they had pushed it over to the location. On rebuttal, Officer Gouge testified he drove the car about 30 to 40 feet; that the dashboard appeared disassembled; and that although he did not inspect Torres's hands, he (Gouge) did not get any grease on him from handling Torres.

turned and put his hand in Torres's pocket. Torres had his back to the police, he felt there was something in his pocket, and he wanted to take it out, but at that moment the police were ordering him to raise his hands and not move. Torres did not know what Rayon had put in his pocket.

Rayon was called as a witness on behalf of the defense, but asserted his Fifth Amendment privilege against self-incrimination and refused to answer most questions.

## II

### *The Search of Torres's Pocket*

■ Torres argues that once Gouge knew Torres had no weapons, he should have stopped the search and he had no justification for searching the film canister. The People argue Gouge had probable cause to believe the canister contained drugs, and thus the search was proper.

■ There is no dispute that Torres was properly subjected to a detention search for weapons during the execution of the search warrant. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868].) However, once the officer determines the detainee is not armed, he may not remove items from the detainee's person merely to search for contraband. (*Sibron* v. *New York* (1968) 392 U.S. 40, 65-66 [20 L.Ed.2d 917, 936, 88 S.Ct. 1889].)[4]

Two recent California appellate cases have evaluated the lawfulness of a search justified in part on an officer's sensorial perception that the defendant has drugs in his pocket. (*People* v. *Fay* (1986) 184 Cal.App.3d 882 [229 Cal.Rptr. 291]; *People* v. *Lee* (1987) 194 Cal.App.3d 975 [240 Cal.Rptr. 32].)

In *Lee,* the officer had lawfully detained the defendant based on a reasonable suspicion he was selling drugs. During the pat-search for weapons, the officer felt a clump of small resilient objects, which he knew was not a weapon, but which he believed were heroin-filled balloons. The officer arrested the defendant for possession of heroin, reached inside his pocket, and removed the heroin. In holding the scope of the search lawful, the court in *Lee* "reject[ed] the notion that an officer who reliably detects contraband during a properly conducted *Terry* search cannot seize it." (*Id.* at p. 983.)

---

[4]This search and seizure issue is governed by federal not California constitutional standards under article I, section 28, subdivision (d) of our Constitution (Proposition 8). (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].)

The court noted that the officer formed a definite belief based on the unmistakable tactile characteristics of narcotics-filled balloons, and thus the situation was the "tactile equivalent of cases where an officer permissibly and reliably detects contraband through sight or smell and thereupon arrests the defendant." (*Id.* at p. 984.) The court concluded that the officer's tactile perceptions, coupled with the other facts known to him (i.e., a citizen informant's information about the sale of heroin at the place where the defendant was detained and the defendant's suspicious reaction to the approach of the police), furnished probable cause to believe defendant's jacket contained heroin, and therefore to arrest him, which in turn justified a more thorough search and the seizure of the contraband. The court noted that the officer *definitely identified the object as contraband* simultaneously with his determination the defendant was not armed.

In *Fay,* the officers had a warrant authorizing the search of an apartment where two individuals were believed to be selling heroin. Two men arrived while the police were in the apartment. One of the men, upon seeing the police, looked like " 'a kid with his hand caught in the cookie jar' " and immediately reached into his pocket and discarded what could be visually identified as heroin wrapped in clear plastic. The second man, the defendant, reached into his pocket, was ordered to freeze by the police, and pulled his hand out of his pocket, which allowed the police to observe part of a clear plastic package similar to that discarded by his companion. An officer removed the plastic package from the defendant's pocket, and saw what could be identified as heroin. (*People* v. *Fay, supra,* 184 Cal.App.3d at pp. 887-888.)

The court's analysis in *Fay* was as follows. The general rule is that an officer may remove weapons from a detainee's clothing, but may not remove drug-related items whose tactile contours do not feel like weapons. (*Sibron* v. *New York, supra,* 392 U.S. at pp. 65-66 [20 L.Ed.2d at p. 936].) Thus, the removal of the package from the defendant's trousers could not be justified if he was only detained. The rationale for the rule is that unlike a search without a warrant incident to a lawful arrest, a detention search is not justified by any need to prevent the disappearance of evidence of crime. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 29 [20 L.Ed.2d at p. 910-911].) In contrast, a search incident to an arrest allows the seizure of evidence on the arrestee's person or within his immediate reach. Moreover, a search incident to an arrest may in fact *precede* the actual arrest, as long as the officer had reasonable cause *before* the search to make the arrest. (*People* v. *Simon* (1955) 45 Cal.2d 645, 648 [290 P.2d 531].) The court in *People* v. *Fay, supra,* 184 Cal.App.3d at page 893, concluded the officers had probable cause to arrest the defendant before the search of his pocket based on various inferences arising from the circumstances (i.e., the defendant's

action of reaching into his pocket in response to the police was the same as his companion who had just dropped heroin; the plastic material observed in the defendant's pocket appeared to be the same as that produced from a controlled purchase and discarded by the companion).

■    The rule that can be gleaned from *Lee* and *Fay* is that the officer's entry into the individual's pocket can only be justified if the officer's sensorial perception, coupled with the other circumstances, was sufficient to establish probable cause to arrest the defendant for possession of narcotics *before the entry into the pocket.* That is, an officer can make an interior pocket search for contraband only as an incident to an arrest, not merely as part of a detention. If there was no probable cause to arrest the individual for possession of narcotics *before* the officer seized the item from the pocket, the search was invalid. The probable cause may be furnished by the officer's actual tactile perception of narcotics during a pat-search for weapons (*Lee*), or by the officer's identification of an item which, when coupled with other circumstances, creates a reasonable inference that the item is contraband (*Fay*).

■    Here, Torres turned away when Gouge announced they were police officers with a search warrant, and Gouge felt a film canister during the pat-search for weapons. These are the only relevant circumstances in this case.    ■    There were no facts in the affidavit in support of the search warrant which connected Torres to the sale of narcotics at the yard. As the People concede, Torres's mere presence on the premises to be searched under the search warrant cannot justify the search of his person. (*Ybarra* v. *Illinois* (1979) 444 U.S. 85, 91 [62 L.Ed.2d 238, 245, 100 S.Ct. 338]; *People* v. *Leib* (1976) 16 Cal.3d 869, 874 [129 Cal.Rptr. 433, 548 P.2d 1105].)[5]

.(5)    A film canister, even if it is a commonly used storage container for narcotics, is also commonly used for its express purpose of holding film, and indeed may be used to store a wide variety of legal items. We are not convinced by the People's argument that the carrying of a film canister is so indicative of drug possession as to justify an arrest merely based on the absence of anything associated with photography in the near vicinity. Unlike such items as heroin balloons, which an officer can identify as contraband merely by feeling them, a film canister cannot be identified as containing drugs merely by feeling it. Indeed, Officer Gouge testified that in his prior experience the canisters he has searched during the execution of search warrants either have contained drugs *or were empty*. We conclude that a film canister is not a distinctive drug-carrying item equivalent to a heroin balloon, a paper bindle, or a marijuana-smelling brick-shaped

---

[5] The search warrant did not authorize the search of bystanders' pockets.

package, which may be seized upon observation. (See, e.g., *Texas* v. *Brown* (1983) 460 U.S. 730, 742-743 [75 L.Ed.2d 502, 514, 103 S.Ct. 1535]; *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 898-899 [150 Cal.Rptr. 910, 587 P.2d 706]; *People* v. *McKinnon* (1972) 7 Cal.3d 899, 917 [103 Cal.Rptr. 897, 500 P.2d 1097].) Rather, the canister is akin to a common product like a pill bottle, a pack of cigarettes, or a plastic bag which may *not* be seized merely because it may also be commonly used to store narcotics. (See, e.g., *People* v. *Leib, supra,* 16 Cal.3d at p. 876, and case there cited; *Amacher* v. *Superior Court* (1969) 1 Cal.App.3d 150, 154-155 [81 Cal.Rptr. 558]; *People* v. *Huntsman* (1984) 152 Cal.App.3d 1073, 1083-1088 [200 Cal.Rptr. 89].)

Torres's act of turning away from the police is at best mildly suspicious. ■ Probable cause requires a reasonable ground for belief of guilt; it requires less than evidence which justifies conviction, but it requires more than a mere suspicion. (*People* v. *Fay, supra,* 184 Cal.App.3d at p. 893.) **(1c)** Unlike the situation in *Fay,* where the officers had a myriad of suspicious circumstances upon which to base a belief that the clear plastic package sticking out of the individual's pocket contained heroin, the suspicious circumstances here are sparse. When we couple Torres's act of only turning, not running away, with the discovery of the film canister in his pocket, we cannot conclude Gouge had anything more than a good hunch that Torres possessed narcotics. This is not enough to justify his arrest for possession of narcotics, and thus the interior search of his pocket exceeded the proper scope of what was only a detention search.

The People do not argue that Torres gave his consent to the search of the canister when he removed the item from his pocket in response to the officer's question, "What is this?" or when he told the officer he could open it in response to the officer's request that Torres open it. The officer's questions were not asking *permission* to search, but were requesting information and compliance. The circumstances indicate Torres had no choice but to comply with the requests.

Nor can Officer Gouge's question, "What is this?" be characterized as a temporary detention for general on-the-scene questioning as to facts surrounding the crime followed by consent to search. (See *People* v. *Ceccone* (1968) 260 Cal.App.2d 886, 893-894 [67 Cal.Rptr. 499].) The question was not justified by the pat-search for weapons since Gouge knew it was not a weapon. The question was asked because Gouge had felt the canister in his pocket, and thus was a preliminary step into the search of Torres's person, not a mere factfinding question pertaining to the authorized search for heroin. (Compare *People* v. *McLean* (1970) 6 Cal.App.3d 300, 306 [85 Cal.Rptr. 683].) The evidence of the canister should have been excluded since it was seized in violation of the Fourth Amendment of the federal

Constitution. (*Sibron* v. *New York, supra,* 392 U.S. at pp. 65-66, 20 L.Ed.2d at p. 936.) Without the canister, there is no evidence against Torres, and the judgment must be reversed.

### III-VI*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

Valdez's judgment is affirmed. Torres's judgment is reversed.

Kremer, P. J., and Thaxton, J.,† concurred.

---

*See footnote 1, *ante,* page 799.
†Assigned by the Chairperson of Judicial Council.