[No. G007480. Fourth Dist., Div. Three. Dec. 12, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES STEVEN ACEVEDO, Defendant and Appellant.

COUNSEL

Theodore A. Cohen for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Janelle B. Davis and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CROSBY, Acting P. J.—Charles Steven Acevedo's motion to suppress was denied, and he pleaded guilty to possession of marijuana for sale. Under compulsion of United States Supreme Court authority, we agree the warrantless search of a lunch bag seized from the trunk of his car was unlawful and reverse accordingly.

I

In October 1987, federal drug enforcement agents in Hawaii seized a Federal Express package containing a cooler and nine clear bags of marijuana addressed to J.R. Daza at 805 West Stevens Avenue in Santa Ana. In cooperation with federal officials, Santa Ana police confirmed Daza's address and telephone number and left the package at the local Federal Express office for pickup.

Police followed Daza home after he retrieved the package. Daza left his apartment approximately 45 minutes later and discarded the wrapping and cardboard box in a trash bin. One of the surveilling officers went to obtain a search warrant for the apartment.

Within one-half hour, Acevedo's codefendant, Richard St. George, also walked out of the apartment, a blue knapsack on his back. Officers detained St. George, searched the knapsack, and found more than a pound of marijuana inside.

Within another half hour, an empty-handed Acevedo entered the apartment. He left 10 minutes later carrying a brown lunch bag which appeared to be full. He placed the bag in the trunk of an automobile and drove away. Fearing the loss of evidence, police officers stopped the car, opened the trunk, searched the brown bag, and discovered marijuana. The search warrant for the apartment arrived soon after.

In the superior court, Acevedo contended the officers lacked probable cause to search the trunk of the car. He also argued the officers could not open the lunch bag without a warrant. We disagree with the first contention, but the second carries the day.

## II

Acevedo relies on *People* v. *Valdez* (1987) 196 Cal.App.3d 799 [242 Cal.Rptr. 142] to support his claim that the trunk search was without probable cause. In *Valdez* a film canister containing contraband was suppressed because officers had no probable cause for its seizure: Nothing connected the defendant to the sale of illegal drugs; and a canister "is not a distinctive drug-carrying item equivalent to a heroin balloon, a paper bindle, or a marijuana-smelling brick-shaped package, which may be seized upon observation." (*Id.*, at pp. 806-807.) ■ Here, however, there was more than a fair probability Acevedo was involved in dealing drugs and carrying marijuana in the lunch bag (*Illinois* v. *Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317]): Although the occupant of the apartment was not in, an empty-handed Acevedo entered within two hours of the arrival of a sizeable quantity of contraband and emerged with something in a brown paper bag which approximated the size of the wrapped packages officers knew contained marijuana. Accordingly, there was probable cause for a warrantless search of the trunk and seizure of the brown bag under the automobile exception to the Fourth Amendment. (See generally *United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157].)

## III

■ But could the officers open the bag they lawfully seized? They could not without first obtaining a warrant.

■ That is the rule of a line of cases headed by *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]. There, federal agents had probable cause to believe marijuana was concealed in a footlocker located in the trunk of a car. The occupants were arrested, and the footlocker was seized and searched without a warrant. The Supreme Court found the search unlawful. There are, ruled the court, significantly greater privacy interests in personal luggage as opposed to cars: "Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects." (*Id.*, at p. 13 [53 L.Ed.2d at p. 549].)

In *United States* v. *Ross, supra*, 456 U.S. 798, on the other hand, officers had probable cause to believe narcotics were being sold from the trunk of

the defendant's vehicle. Police stopped the car, saw a bullet on the front seat, and retrieved a pistol from the glove compartment. The defendant was arrested, and officers opened the car's trunk and removed a brown paper bag. They searched it and found heroin. They discovered additional contraband in a zippered pouch. The Supreme Court upheld the warrantless search, distinguishing *Chadwick* on the basis that probable cause to search was limited to the footlocker in that case. In *Ross*, however, "police officers had probable cause to search respondent's *entire* vehicle." (*Id.*, at p. 817 [72 L.Ed.2d at p. 589], italics added.)[1]

This distinction was more recently noted in *United States v. Johns* (1985) 469 U.S. 478 [83 L.Ed.2d 890, 105 S.Ct. 881]. There, customs officers developed probable cause to believe marijuana had been smuggled into parked trucks at a remote private airstrip. Federal agents approached the trucks, detected the odor of marijuana, and saw packages likely to contain contraband. The packages were seized and searched without a warrant.

*Chadwick* was inapplicable, determined the Supreme Court, because the customs officers "were unaware of the packages until they approached the trucks, and contraband might well have been hidden elsewhere in the vehicles . . . [T]he Customs officers had probable cause to believe that not only the packages but also the vehicles themselves contained contraband. . . . [¶] [T]he police [in *Chadwick*] had no probable cause to believe that the automobile, as contrasted to the footlocker, contained contraband." (*Johns, supra,* 469 U.S. at pp. 482-483 [83 L.Ed.2d at p. 895].)

Shortly after *Johns* the Supreme Court divided equally in affirming without out opinion a decision of the Oklahoma Court of Criminal Appeals to suppress evidence obtained under circumstances similar to ours. (*Oklahoma v. Castleberry* (1985) 471 U.S. 146 [85 L.Ed.2d 112, 105 S.Ct. 1859].) In *Castleberry v. State* (Okla.Crim.App. 1984) 678 P.2d 720, police officers knew the defendant carried narcotics in blue suitcases in the trunk of a car. After arresting him, they opened the trunk, seized the suitcases, and searched them without a warrant. Relying on *Chadwick* and *Sanders,* the Oklahoma appellate panel determined the contraband should have been suppressed: "If the officer has probable cause to believe there is contraband somewhere in the car, but he does not know exactly where, he may search the entire car as well as any containers found therein. [Citations.] If, on the other hand, the officer only has probable cause to believe there is contraband in a specific container in the car, he must detain the container and

---

[1] *Ross* did reject the suggestion in *Arkansas v. Sanders* (1979) 442 U.S. 753, 764 [61 L.Ed.2d 235, 245, 99 S.Ct. 2586], footnote 13 that a warrant may always be required to search containers found in a vehicle. (*United States v. Ross, supra,* 456 U.S. at p. 824 [72 L.Ed.2d at p. 593].)

delay his search until a search warrant is obtained. [Citations.]" (*Id.*, at p. 724.)

The Ninth Circuit, on facts remarkably close to those of the present case, has also confirmed the continuing validity of the *Chadwick-Ross* distinction. In *United States* v. *Salazar* (9th Cir. 1986) 805 F.2d 1394, 1396, police officers observed known drug dealers deliver suspicious-looking packages to others. The recipients were detained, and a search of the packages revealed cocaine. Officers then saw the dealers hand a brown shopping bag to Salazar, who placed the item in a locked car. Salazar was stopped as he drove away, and the bag was seized and searched. Citing *Chadwick,* the Court of Appeals concluded a warrantless search of the bag was unlawful: "Where, prior to a search, officers have probable cause to believe that a specific closed container holds contraband . . . , they must obtain a search warrant before opening it, even though it is located in an automobile. [Citation.]" (*Id.*, at p. 1397.)

We recognize the anomalous nature of the *Ross-Chadwick* dichotomy: If police have probable cause to believe contraband is concealed in a particular container, they must obtain a warrant before searching it, even when it is being stored in a vehicle. If the investigation has, for whatever reason, yet to focus on a particular container and there is only probable cause to believe the contraband is located *somewhere* in an automobile, officers may conduct a warrantless search of any container in the car that could reasonably conceal the evidence. The first situation was described by Justice Kaus in *People* v. *Ruggles* (1985) 39 Cal.3d 1 [216 Cal.Rptr. 88, 702 P.2d 170] as "type A" and the second "type B." The crucial distinction is that in a type A case "officers do not have probable cause to believe the vehicle itself—as distinguished from the container—contains seizable material." (*Id.*, at p. 14 (dis. opn. of Kaus, J.).)

One unfortunate feature of the rule is an incentive for police officers to withhold evidence related to probable cause in order to fit within the more generous confines of *Ross*. ■■■ Despite misgivings concerning the continuing validity of *Chadwick* after *Ross*, we are in no position to ignore the Supreme Court's current mandate. This is a type A case; the officers had probable cause to believe marijuana would be found only in a brown lunch bag and nowhere else in the car. We are compelled to hold they should have obtained a search warrant before opening it.

■■■ The Attorney General raises several arguments in support of the search. He contends the warrant issue was waived. But the record indicates the parties stipulated to a statement of facts (with minor additions) taken from the prosecutor's responding papers below and both sides would

stipulate to additional facts as issues arose. Acevedo's counsel argued, "Now, then, according to *Castleberry,* which is a Ninth Circuit [*sic*] case, according to that they have to have a search warrant to search the bag." Counsel's citation may have been skewed but it was adequate to place the necessity of a warrant at issue. We agree the statement of facts is thin regarding the actual search of the trunk and lunch bag, but the failure of the record on this point is the responsibility of the prosecutor who had the burden to establish the reasonableness of the search and failed to present additional facts or testimony.

 The Attorney General also argues, "[s]ince the officers had probable cause to arrest appellant they had the right to search the entire car and any objects in the car." This argument misstates the law, however, for police may only search the *passenger compartment* of a car incident to a lawful arrest. (*New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860].) The *Chadwick-Ross* line of cases applies to trunk searches.

 The Attorney General urges application of the inevitable discovery doctrine, claiming the warrant which arrived shortly after the search of the bag would have authorized its search as part of the contents of the apartment and that the police could have secured the premises pending the arrival of the warrant and prevented its departure. He cites no evidence in the record or legal authority to support these propositions. Police officers have no right to track down an item in the vehicle or home of another merely because certain items expected to be found in the place subject to the warrant happen to be missing when it is executed. The warrant authorized the search of Daza's apartment, not a third party's vehicle or bag located far from the premises.

We need not decide whether a warrant would have issued for the unopened bag in police custody. The bag itself was innocuous, and the police knew nothing of Acevedo before he visited "Casa Daza." But the argument is beside the point. If warrantless searches could be upheld on an inevitable discovery theory on the basis that a warrant *would* have issued, no one would bother to secure one.

We are aware that the California Supreme Court has recently said, "We further note that the evidence seized in the house inevitably would have been discovered. [Citations.] The officers who initially entered the . . . house observed blood throughout. It appeared likely that the killer had entered the house and showered; relevant evidence was probably inside. The house was secured and, as the trial court noted, 'there is not a judge in the world that would not sign a warrant with these facts.' " (*People* v. *McDowell* (1988) 46 Cal.3d 551, 564 [250 Cal.Rptr. 530, 758 P.2d 1060].) We view this

language as unfortunate dicta, sure to cause mischief and sure to be recanted by our Supreme Court or rejected by the United States Supreme Court should the occasion arise.[2] Until one of the two higher courts *holds* otherwise, we cannot accept the spurious notion that probable cause to obtain a search warrant is the equivalent of having done so: "Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause' [citation], for the Constitution requires 'that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police. . . .'" (*Katz* v. *United States* (1967) 389 U.S. 347, 356-357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507]; see also *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 639 [108 Cal.Rptr. 585, 511 P.2d 33].)

Finally, the Attorney General claims transportation of the marijuana was a separate crime and the car itself became evidence which could have been seized and searched. Whether the scope of that search would permissibly reach closed containers during an inventory of the vehicle we need not address. ■ This argument was not presented in any fashion below: "If the People had other theories to support their contention that the evidence was not the product of illegal police conduct, the proper place to argue those theories was on the trial level at the suppression hearing. The People offered no such argument at that hearing and may not do so for the first time on appeal." (*Lorenzana* v. *Superior Court, supra,* 9 Cal.3d at p. 640; *People* v. *Neer* (1986) 177 Cal.App.3d 991, 1006 [223 Cal.Rptr. 555] (dis. opn. of Crosby, J.); *United States* v. *Salazar, supra,* 805 F.2d at pp. 1398-1399.)

The judgment is reversed with directions to grant the motion to suppress.

Wallin, J., concurred.

SONENSHINE, J.—I concur with the result but withhold judgment at this time on the import of the quoted language of *People* v. *McDowell* (1988) 46 Cal.3d 551 [250 Cal.Rptr. 530, 758 P.2d 1060]. I believe that analysis is unnecessary to the opinion, in that the Attorney General's inevitable discovery argument was not based on the theory a different warrant would have issued from any "judge in the world." Rather, he argued "the officers could have searched the bag under the auspices of the warrant that arrived ten minutes later," rendering it "independently admissible under the doctrine of inevitable discovery." Therefore his argument was not that a

---

[2] We do not understand our concurring colleague's refusal to come to grips with the *McDowell* language we question. It was specifically urged as binding authority at oral argument for the proposition that probable cause sufficient to obtain a warrant is in and of itself enough to uphold a warrantless search; it must be addressed.

warrant *would* have issued, it was that one *did* issue and that the issued warrant inferentially encompassed the bag.

My review of respondent's brief reveals not a single citation to *McDowell*. While respondent did attempt to inject such an analysis for the first time during oral argument, I believe the issue was not timely raised. The majority addresses the contention, but by disposing of an argument not raised by the parties, it is erecting a straw person to knock down.

Respondent's petition for review by the Supreme Court was denied March 15, 1990. Panelli, J., was of the opinion that the petition should be granted.