[No. C007253. Third Dist. Oct. 2, 1990.]

THE PEOPLE, Plaintiff and Appellant, v.
STEPHEN JOSEPH CHAPMAN, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Shirley A. Nelson and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Appellant.

Joseph B. de Illy for Defendant and Respondent.

OPINION

SCOTLAND, J.—Defendant was charged with possession and transportation of methamphetamine (Health & Saf. Code, §§ 11377, 11379). After granting defendant's motion to suppress (Pen. Code, § 1538.5) the methamphetamine, which was found in what the arresting officer described as a "snuff case" opened by the officer during a warrantless search of defendant's vehicle, the trial court dismissed the information.

On appeal (Pen. Code, § 1238, subd. (a)(8)), the People contend that the trial court erred in suppressing the evidence because (1) the officer had probable cause to believe the snuff case contained contraband, and (2) even in the absence of probable cause, the evidence was admissible under the inevitable discovery doctrine. We disagree and shall affirm the judgment.

FACTS

At approximately 4 a.m., California Highway Patrol Officers Paul Kenny and Ernest Stephens were driving behind a pickup truck on a residential street in the City of Williams. The pickup pulled into a left-hand "turn pocket" to go north on Interstate 5. However, rather than turn, the truck proceeded straight (eastbound) into the lane for opposing traffic, traveled on the wrong side of the street, then abruptly jerked to the right, drove across the eastbound side of the street, and stopped on the right-hand side of the road. Officer Kenny activated his red light and parked behind the pickup.

Kenny approached the driver's side of the pickup and requested the driver (defendant) to take a field sobriety test. Officer Stephens waited by the passenger side of the pickup. Following completion of the field sobriety test, which defendant passed, Kenny took defendant back to the pickup in order for defendant to obtain the registration from the glove compartment. Kenny did not inform Stephens that defendant passed the field sobriety test.

When the passenger door was opened, Officer Stephens saw that the female passenger was unclothed and was attempting to both cover herself with a sleeping bag and hide a can of beer. Stephens so advised Kenny and retrieved the open beer can. Stephens then began searching the pickup for additional open containers of alcohol.

Although Stephens did not find any more open containers, he did find "a small metal case," which he believed to be a "snuff case," on the floorboard in front of the driver's seat. Because the container looked "much like other cases that [he] had been involved in, with people that have been using narcotics, [Officer Stephens] made the assumption that the case possibly did contain narcotics." Upon opening the container, Stephens discovered a small amount of methamphetamine inside. Defendant was then arrested.

Because the passenger was nude, the officers called for a female officer "to assist [them] with the passenger." When Officer Jane Cusnov arrived, the passenger's clothing was searched, after which the passenger got dressed and was asked to get out of the vehicle.

As the female was exiting the truck, the officers found an empty packet containing white residue on the floorboard in front of the passenger's seat. A search of the passenger's purse revealed a small bindle of a white powder substance.

## DISCUSSION

### I

It is undisputed by the parties that defendant was properly stopped and the sobriety test was lawfully initiated. Moreover, there is no quarrel with the legal proposition that, after observing the open container of alcohol, the officers had the right to search the vehicle for additional containers of alcohol. (*United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157].) ■ The question posed is whether Officer Stephens acted properly in opening what appeared to him to be a snuff case when it clearly was not a container for alcohol and the officer did not believe it held alcohol. As stated by the People, "The single dispositive issue in the suppression motion below is whether Officer Stephens, on the basis of his training and prior experience with similar containers, had probable cause to believe that the 'snuff case' . . . contained contraband."[1]

---

[1] Since neither defendant nor the female passenger was under arrest at the time defendant's vehicle was searched, the seizure cannot be justified under *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860], which holds "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous

In this regard, Officer Stephens testified he believed he had probable cause to open the snuff box due to his "prior experience," upon which he did not elaborate, and "[b]ased on the fact that the stop was initiated, due to a person possibly being under the influence of alcohol or, and/or other substances, the fact that we found alcohol in the vehicle, an open container, and the case that is much like other cases that I have been involved in, with people that have been using narcotics, I made the assumption that the case possibly did contain narcotics."

■ Probable cause to believe a container holds contraband may be adequately afforded by its shape, design, and the manner in which it is carried. (*People* v. *McKinnon* (1972) 7 Cal.3d 899, 917 [103 Cal.Rptr. 897, 500 P.2d 1097].) The determination of probable cause may take into consideration the officer's prior experience in dealing with such containers. (*People* v. *Lilienthal* (1978) 22 Cal.3d 891, 898-899 [150 Cal.Rptr. 910, 587 P.2d 1097].) However, a container which "is akin to a common product like a pill bottle, a pack of cigarettes, or a plastic bag . . . may *not* be seized merely because it may also be commonly used to store narcotics." (*People* v. *Valdez* (1987) 196 Cal.App.3d 799, 807 [242 Cal.Rptr. 142], italics in original.)

The People rely on *People* v. *Lilienthal, supra,* and *People* v. *Chavers* (1983) 33 Cal.3d 462 [189 Cal.Rptr. 169, 658 P.2d 96] in urging us to reverse the trial court's determination that probable cause did not exist to search the metal container.

In *Lilienthal* the defendant had been stopped for a traffic violation. While he was reaching for his driver's license, a folded square paper bindle containing cocaine fell from his wallet. The court upheld the lawfulness of the search of the bindle because of the distinctive manner in which it was folded and the officer's testimony that he had made numerous prior arrests where cocaine was possessed in similarly folded bindles. (*Lilienthal, supra,* 22 Cal.3d at pp. 898-899.)

In *Chavers*, police responding to the report of an armed robbery observed a car and its occupants roughly matching the description of the robbery suspects and vehicle. After stopping the car, which was being driven in an erratic manner and at high speed, the officers observed in plain view items which they reasonably believed were fruits of the robbery. The officers commenced a search of the vehicle and removed from the glove compartment a plastic zippered shaving kit. The kit felt unusually heavy, and one of

incident of that arrest, search the passenger compartment of that automobile." (453 U.S. at p. 460 [69 L.Ed.2d at p. 775], fns. omitted.)

the officers felt the outline of a gun. The kit was opened, and a revolver was found. The court upheld the opening of the kit because the officer's sense of touch was as "meaningful and accurate as if the container had been transparent and he had seen the gun within the container." (*Chavers, supra,* 33 Cal.3d at p. 471.)

■ Neither *Lilienthal* nor *Chavers* is of assistance to the People. *Lilienthal* is not applicable because the so-called snuff case seized by Officer Stephens was not so distinctive in shape, design and the manner in which it was carried to afford the officer probable cause to believe it contained contraband. On our own motion, we have augmented the record on appeal to include the container. (Cal. Rules of Court, rule 12(a).) It seems to be made of brass with shamrocks, horseshoes and wishbones on its exterior and has the appearance of a woman's makeup compact. (A photocopy of the container is attached as an appendix, *post*.) In fact, at one point during his testimony, Officer Stephens acknowledged that "[t]o all exterior appearances it was simply a woman's compact . . . ." Nothing about the container indicates that it is a distinctive drug-carrying item equivalent to a heroin balloon, a brick-shaped package smelling of marijuana or the paper bindle seized in *Lilienthal*. (*People* v. *Valdez, supra*, 196 Cal.App.3d at p. 806.) *Chavers* is inapplicable because nothing about the appearance or feel of the container effectively announced that it contained contraband.

Rather, this case is similar to *People* v. *Valdez, supra*, 196 Cal.App.3d 799. In *Valdez*, an officer conducting a lawful patdown search felt a film canister in the defendant's pocket. Observing that there was no photographic equipment in the area, the officer believed there would be drugs in the canister. This suspicion was "[b]ased on his 13 years of police experience and 5 years of narcotics experience, . . . The watertight [film] canisters are perfect storage containers for narcotics. He [had] found the canisters hundreds of times when executing search warrants, and if there [was] no photographic equipment, he . . . found that they either contain[ed] drugs or [were] empty." (*Id.*, at p. 803.) Nevertheless, the court concluded that opening the canister was unlawful. It reasoned that a film canister, even if commonly used to store narcotics, also is commonly used to store legitimate items. Thus, the carrying of a film canister is not indicative of drug possession merely based on the absence of anything associated with photography in the near vicinity. (*Id.*, at p. 806.) "Rather, the canister is akin to a common product like a pill bottle, a pack of cigarettes, or a plastic bag which may *not* be seized merely because it may also be commonly used to store narcotics." (*Id.*, at p. 807, italics in original.)

Like the film canister in *Valdez*, the snuff case or woman's compact seized here commonly may be used to store legitimate items. Thus, *its*

*appearance alone* was insufficient to justify its search despite Officer Stephens's past experience with similar containers.

We are mindful that the officer's decision to search the container was not based solely on its appearance. Stephens decided to open the container, in part, "[b]ased on the fact that the stop [for erratic driving] was initiated, due to a person possibly being under the influence of alcohol or, and/or other substances, [and] the fact that [the officers] found alcohol in the vehicle, an open container, . . ." However, the officer did not testify that he felt defendant was under the influence of drugs, thus leading him to believe that the snuff box or compact contained an illicit drug which may have affected defendant's driving. To the contrary, Stephens stated that, prior to opening the metal case, he had *no indication* of narcotics being in the truck. Rather, the officers had observed alcohol in the vehicle, which was consistent with their concern that defendant was driving under the influence of intoxicating liquor.

In sum, the trial court properly found that, while the circumstances under which the snuff case or woman's compact was discovered suggested the possibility of additional *alcohol* in the vehicle, they were not such that Officer Stephens reasonably could conclude this common container held illegal drugs. Accordingly, he lacked probable cause to open the container. (*Valdez, supra,* 196 Cal.App.3d at pp. 806-807.)

## II

■ The People contend, for the first time on appeal, that even in the absence of probable cause to open the container, the doctrine of inevitable discovery applies. This is so, it is argued, because the search of the passenger's side of the vehicle, which revealed a bindle containing methamphetamine residue when the passenger exited, was delayed only until the arrival of the female officer who had been called to remove the nude female from the vehicle.

Recognizing that they are generally prohibited from raising a theory on appeal which they had not raised in the trial court (see *People v. Superior Court (Simon)* (1972) 7 Cal.3d 186, 198-199 [101 Cal.Rptr. 837, 496 P.2d 1205]), the People seek to circumvent this proscription by urging that they come within an exception to the rule, i.e., when the new theory does not require any additional factual determinations, the issue is strictly a question of law and may be raised for the first time on appeal. (See *People v. Gorak* (1987) 196 Cal.App.3d 1032, 1039 [242 Cal.Rptr. 307].)

This is not a case in which additional facts need not be resolved. In explaining the sequence of events, Officer Stephens testified: "Immediately

after I placed [defendant] under arrest, it was evident that the passenger was unclothed and wrapped in a sleeping bag. We requested that Officer Jane Cusnov from the Williams Police Department respond and assist us with the passenger. We asked her for her clothing, she gave us her clothing, we searched the clothing, and then we gave it back to her, and she dressed under the observation of Officer Cusnov, and then we asked her step out of the vehicle."

Stephens's testimony makes it abundantly clear that the officers called for the backup female officer only after they had found the methamphetamine in the snuff case/compact and arrested defendant. Had the officers, prior to finding the methamphetamine, determined to call for a female officer in order to facilitate their legal search for other open containers, the inevitable discovery theory would apply. However, nothing in the record shows this to be the case. It is possible that if the snuff case/compact had not been opened, the officers might have cited defendant for the open container and permitted him and his passenger to go on their way.

Since the success of the inevitable discovery theory turns upon a determination of facts not presented to the trial court, the People's new theory is not subject to review.

### DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Marler, J., concurred.

APPENDIX