Filed 4/3/14  In re W.B. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re W.B., a Person Coming Under the Juvenile Court Law. | B249718 |
| | (Los Angeles County Super. Ct. No. YJ37053) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| W.B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Irma J. Brown, Judge.  Affirmed.

Esther R. Sorkin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Jessica B. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \*

While on juvenile probation for theft, W.B. (sometimes referred to herein as "the minor"), acting with an accomplice, robbed two people of a wallet and a cell phone. The victims described the two robbers to the police. Less than an hour later, within a few blocks of the place where the robberies were committed, the police officer who took the robbery report spotted W.B. exactly matching the description of one robber, standing near another male who loosely matched the description of the second robber. The officer told W.B. to stop and immediately handcuffed him, then searched him twice. In the first search, the officer was looking for weapons for safety reasons. No weapon was found. In the second search, the officer found in the pocket of the minor's sweatpants the cell phone taken from one of the robbery victims.

The trial court found W.B. had committed two felony counts of robbery. The only issue on appeal is the minor's argument the search was unlawful, so the trial court should have excluded evidence that one of the victim's cell phone was found in the minor's pocket. We affirm on the basis there was probable cause to arrest the minor because he matched the victims' detailed description of one of the robbers, was accompanied by a second male who partly matched the description of the second robber, and was in the same area where the crimes were committed less than an hour before, so the search was conducted pursuant to a lawful arrest.

**FACTS**

In 2012, W.B. was 14 years old, living with his older brother and their grandfather and attending school, when he committed his first crime. On October 24, at about 8:30 p.m., W.B., together with another minor and an adult, approached a woman on the street and demanded her cell phone. The woman refused to hand over her cell phone, so the other minor reached for her purse. Again, she resisted, at which point W.B. pulled a small handgun from his sweatshirt pocket and pointed it at the woman. In fear, the woman gave them her purse. Several surveillance videos from various stores in the area showed W.B. and his companions using the victim's credit cards to buy gas, food and other items that day and the next day. After he was arrested, W.B. admitted being affiliated with members of the "46 Crips" street gang and that he used marijuana.

In court, W.B. made a plea agreement, which the court accepted, to strike the first and second counts of the juvenile delinquency petition alleging robbery and receiving stolen property in exchange for W.B. admitting the truth of the third count of theft of the victim's credit cards. He was declared a ward of the court and permitted to remain at home on probation. But three months after committing his first crime, shortly after his 15th birthday, and only seven weeks after he was placed on probation, W.B. committed the robberies described below.

On April 11, 2013, a Welfare and Institutions Code section 602 petition was filed charging W.B. with two counts of second degree robbery (Pen. Code, § 211). The juvenile court held an evidentiary hearing at which the two robbery victims and the arresting police officer testified. One of the victims, Miguel Ayon testified that on January 23, 2013, around 4:30 p.m., he and his girlfriend, Graciela Lopez, were walking on Gramercy Place toward Vernon Avenue, when the minor and another black male approached them. The minor asked Mr. Ayon where he was from and followed closely behind him, while the other male walked alongside Mr. Ayon. The two followed Mr. Ayon and Ms. Lopez, practically sandwiching the two victims in between them, as they continued walking the entire block until they reached Vernon.

Mr. Ayon heard the minor say he had a gun and should just kill Mr. Ayon because he was sure Mr. Ayon was someone he knew. Mr. Ayon and Ms. Lopez kept walking, holding hands, pretending to ignore the minor and his accomplice, though Mr. Ayon looked back at the minor about three times as they walked. The minor approached to within three or four feet of Mr. Ayon and told him to take his stuff out of his pockets. Mr. Ayon said he did not have anything. The minor demanded Mr. Ayon give him the wallet in his back pocket. Mr. Ayon gave his wallet to the minor because he believed he had a gun in his hand. The minor's accomplice took Ms. Lopez's cell phone which she had in her hand. After robbing the victims, the minor said what gang he was from, that he knew where Mr. Ayon lived, and that if Mr. Ayon told anyone about the robbery, he would kill him.

3

Mr. Ayon identified the minor in court as the person who took his wallet and testified that, although the minor was behind him during most of the encounter, it was not possible he could have mistaken the minor because when he identified the minor to the police shortly after the robbery, he was wearing exactly the same clothes that he was wearing at the time of the robbery.

Ms. Lopez also identified the minor in court and corroborated the testimony of Mr. Ayon. After the robbery, Ms. Lopez went to the police station, where she was told to call in a report of the crime. As she was walking back home from the police station, Ms. Lopez saw the minor and his accomplice standing at Western and Vernon. She called 911 and gave a description of the minor and his accomplice, then returned home. She reported to police that the minor was wearing red sweat pants, and his accomplice was wearing a green hoodie. The officer called her back to tell her she needed to identify a suspect, and she identified W.B. in the field after his arrest. The officer returned her cell phone to her.

Los Angeles Police Officer Patrick Lane testified he was the first officer to contact the minor at about 5:25 p.m. that day, less than an hour after the robbery. Officer Lane had taken a robbery report directly from the victims, who described the robbers and told him a wallet was taken from Mr. Ayon and a cell phone was taken from Ms. Lopez. They described one of the robbers as a black male, about five feet nine inches tall, with a thin build, dark complexion, wearing a dark baseball hat or beanie, a black T-shirt, and red sweat pants. Officer Lane saw the minor matching this description, standing on the sidewalk in front of a house at 46th and Western, less than a mile from Gramercy Place and Vernon Avenue, where the robbery took place. The minor was standing with another male who loosely matched the description the victims had given (same height and weight but wearing different clothes), but he walked off and Officer Lane was unable to detain him.

Officer Lane told W.B. to stop, turn around and not to leave, and immediately put him in handcuffs. He told the minor something to the effect that he was conducting an investigation. He conducted a brief patdown search, which he described as a "loose"

4

search, to be sure the minor did not have a weapon, and then, because he was alone, Officer Lane called for backup. A sergeant and other officers arrived within 30 seconds, at which point Officer Lane did a more thorough patdown search and felt a hard object that he believed to be a cell phone in the minor's pocket. He put his hand in the minor's pocket and removed the cell phone. Officer Lane left the minor with the sergeant and went to pick up Mr. Ayon and Ms. Lopez and bring them to the scene for a field showup to see if they could identify the minor as one of the robbers. Officer Lane showed Ms. Lopez the phone, and she said it was hers. She unlocked it and showed him a picture of Mr. Ayon.

After hearing this evidence and the arguments of counsel, the trial court denied the minor's motion to suppress the evidence obtained in the search. The trial court found the evidence was admissible because Officer Lane had probable cause to arrest and search the minor. The court explained the minor was apprehended shortly after the victims reported the robbery, less than a mile from where the robbery took place, and he matched the detailed description the victims reported to police. In addition, the minor was standing near another male who loosely met the description of the accomplice (same height and weight as reported, but wearing different clothing). The court distinguished the only case cited by the minor in support of the suppression motion, *People v. Curtis* (1969) 70 Cal.2d 347 (*Curtis*), disapproved on other grounds in *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1222, where an officer's arrest and search were found to be unlawful because they were based on a cursory, general description of a suspect in the general area of a reported crime. The trial court found that in contrast, here the two victims gave the arresting officer a detailed description of the minor and his accomplice, who had flanked the victims at close proximity, and the minor matched the description exactly.

The court declared W.B. a ward of the court and ordered him on probation for six months with placement for three months in the Camp Community Placement Program. This appeal followed, challenging only the ruling on the minor's suppression motion.

5

## DISCUSSION

On appeal, the minor relies on *Curtis*, *supra*, and *People v. Craig* (1978) 86 Cal.App.3d 905 (*Craig*), as support for the proposition that the victims' description of the minor and his accomplice was insufficient to establish probable cause to arrest and search him. He acknowledges the description given to police would justify an investigatory detention but contends it was not sufficient to justify a search incident to arrest. The minor also acknowledges that in this case, the standard for probable cause to search is the same as that for probable cause to arrest. Respondent argues the stop was only a detention incident to an investigation and the cell phone was discovered, or would have been discovered, pursuant to a search lawfully conducted for officer safety; or in the alternative, that it was a valid search pursuant to a lawful arrest.

The trial court did not find, and Officer Lane's testimony does not provide, substantial evidence to support a finding that he only detained the minor to conduct an investigation. Officer Lane testified he immediately handcuffed the minor, and the first, "loose" search was to see if the minor had a weapon. But he did not testify that the second patdown search which led to the discovery of Ms. Lopez's cell phone was for purposes of officer safety. We understand the gist of Officer Lane's testimony about the second search, conducted after other officers arrived some 30 seconds after his call for backup, was that he wanted to see if the minor had Ms. Lopez's cell phone in his pocket; in other words, he was looking for evidence that the minor committed the robberies.

The trial court found Officer Lane had probable cause to arrest W.B. when he encountered him on the street less than a mile from the scene of the robbery, matching the detailed description the victims had given him, in the company of another male who loosely matched the description of the accomplice, and therefore the officer was entitled to search the minor for evidence of the crimes. There is no dispute as to the facts; thus, we use independent judgment to determine whether, on the facts described above, the arrest was lawful and, consequently, the search of the minor's pocket and seizure of the cell phone were lawful. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

6

The Fourth Amendment to the United States Constitution protects people against unreasonable searches and seizures conducted without a warrant. The Fourth Amendment is part of the Bill of Rights and reflects a long struggle between our country's founding fathers and Great Britain against governmental assertion of nearly unlimited powers to search and seize. (1 LaFave, Search and Seizure (5th ed. 2012) § 1.1(a), pp. 3-5.) All evidence obtained by searches and seizures in violation of the Fourth Amendment is inadmissible in a criminal trial in state courts. (*Mapp v. Ohio* (1961) 367 U.S. 643.) This is the "exclusionary rule," and a motion to exclude illegally obtained evidence, like the motion made in this case, is a motion to suppress.

A search conducted without a warrant, as in this case, is presumed illegal unless it comes within an exception to the general rule that warrantless searches are per se unreasonable. (*People v. Fay* (1986) 184 Cal.App.3d 882, 891 (*Fay*).) The prosecution has the burden of justifying a warrantless search or seizure by proving that it falls within a recognized exception to the warrant requirement. (*People v. Williams* (1999) 20 Cal.4th 119, 130; *People v. James* (1977) 19 Cal.3d 99, 106.)

A search incident to a lawful arrest is one of those exceptions, permitting the seizure of weapons and evidence on the arrestee's person or within his immediate reach; such a search is justified by the need to prevent the disappearance or destruction of evidence of a crime. (*Gustafson v. Florida* (1973) 414 U.S. 260, 263-266; *U.S. v. Robinson* (1973) 414 U.S. 218, 225-236.) A search incident to an arrest may precede the arrest. (*Rawlings v. Kentucky* (1980) 448 U.S. 98, 111 ["Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."]; *People v. Ingle* (1960) 53 Cal.2d 407, 413 (*Ingle*) ["Where an arrest is lawful the search incident thereto is not unlawful merely because it precedes rather than follows the arrest."].)

The California Penal Code embodies these principles and provides in pertinent part: "A peace officer may arrest a person . . . without a warrant . . . whenever . . . [¶] . . . [¶] . . . [t]he officer has probable cause to believe that the person to be arrested

has committed a felony, whether or not a felony, in fact, has been committed." (§ 836, subd. (a)(3).) "The crucial point is whether probable cause to arrest existed prior to the search . . . ." (*Fay*, *supra*, 184 Cal.App.3d at p. 892.) Probable cause has been generally defined as a state of facts that "would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*Ingle*, *supra*, 53 Cal.2d at p. 412.) Probable cause is a "fluid concept--turning on the assessment of probabilities in particular factual contexts . . . ." (*Illinois v. Gates* (1983) 462 U.S. 213, 232.)

We agree with the trial court that Officer Lane had probable cause to arrest the minor when he encountered him on the street less than a mile from the scene of the robbery, less than an hour after the robberies had been committed, and just after Officer Lane obtained a detailed description of the minor and his accomplice from the victims. Ms. Lopez reported she saw the minor with his accomplice again on the street when she was on her way home from the police station, wearing the same attire that he wore at the time of the robberies. Since the minor and his accomplice were on foot when they committed the robberies, and they were still a short time later on foot when Ms. Lopez saw them on a nearby street, Officer Lane had every reason to look for the minor on foot in the same neighborhood. When he spotted W.B., he exactly matched the description the victims had conveyed directly to Officer Lane: a black male about five feet nine inches tall, with a thin build and dark complexion, wearing distinctive clothing, including a dark baseball hat or beanie, a black T-shirt, and red sweat pants. He was in the company of another black male whose height and weight matched the description the victims gave, although he was wearing different clothes than they described. Under these circumstances, Officer Lane had probable cause to believe the minor had committed a robbery, and therefore, probable cause to arrest the minor without a warrant and to conduct a search for weapons and evidence.

We are not persuaded the two cases on which the minor relies support his argument there was no probable cause to arrest and search him. The first case, *Curtis*, *supra*, primarily dealt with the question whether the defendant had lawfully used violence

8

against a police officer to resist an unlawful arrest. In that case, an officer on patrol received a report of a prowler and, seeing defendant on the street, ordered him to stop. The officer got out of his vehicle in full uniform, told defendant he was under arrest and reached for his arm, but defendant backed away and a violent struggle followed. Most of the opinion is devoted to an analysis of whether it is legal to use force against a police officer to resist an unlawful arrest. (*Curtis*, *supra*, 70 Cal.2d at pp. 350-357.)

In a brief discussion, the court found there was no probable cause to arrest the defendant because the only information the officer possessed was a general description of the suspect and the general area of a burglary. The officer "had received a cursory description of the suspect as a male [black], about six feet tall, wearing a white shirt and tan trousers. While cruising the neighborhood in his patrol car, the officer observed defendant, who matched the foregoing general description, walking along the street." (*Curtis*, *supra*, 70 Cal.2d at pp. 350, 358.) The opinion does not make clear who reported seeing a prowler, when and where he was seen, what exactly he was reported to have done, how much time had passed between the report of a prowler and the officer spotting defendant on the street, nor how far away defendant was from the scene of a burglary when police received a report of a prowler and the officer subsequently encountered him. We agree with the *Curtis* court that the cursory, general description of a black man about six feet tall wearing a white shirt and tan pants, without more, did not establish probable cause to arrest the defendant just because he was walking in the general area of a reported burglary. But, as explained above, this case is markedly different, because the victims gave Officer Lane a more detailed description of the minor dressed in distinctive attire, who was seen shortly after, near the scene of the robberies.

The second case on which the minor relies is *Craig*, *supra*, 86 Cal.App.3d 905. In that case, the court held the "general" description given by a victim of three robbery suspects was sufficient to justify the officers detaining the three to investigate, and that after the victim identified two of the men in the field while they were seated in the lighted squad car, the officers were also entitled to arrest all three and search the car in which they had been driving for evidence. (*Id.* at pp. 911-913.) The minor argues this case

9

supports his claim that Officer Lane was only entitled to detain him for investigation but not to search his pocket for evidence. We disagree, finding that *Craig* is also distinguishable from the facts in this case.

The three suspects in *Craig* were all generally described in substantially the same way, as three black males. The victim described the first suspect as a black male with a small Afro, five feet nine inches tall, medium build, wearing blue levis. He described the second as a black male with a medium Afro, wearing a yellow beanie-type hat with "Cheerios" on the back, and a torn shirt. He described the third as a black male with a small Afro. (*Craig*, *supra*, 86 Cal.App.3d at p. 912, fn. 1.) But when the suspects were stopped, one was wearing pink curlers in his hair, a distinctive detail that the victim would be expected to have noticed and included in the description he gave police. None of the suspects was wearing a "Cheerios" beanie or a torn shirt. (*Ibid.*) The *Craig* court concluded, and we agree, that the suspects matched the descriptions given to police closely enough to justify the officers detaining them to conduct a field showup but not to arrest them until after the victim had identified two of them. *Craig* therefore does not support W.B.'s position, because unlike the suspects in the *Craig* case, the minor in this case matched exactly the victims' description of him, including race, gender, height, complexion, and his distinctive clothing.

We conclude Officer Lane had probable cause to arrest W.B. for the robberies of Mr. Ayon and Ms. Lopez, and to conduct a search for evidence of the crimes, and therefore, it was proper to admit the evidence of Ms. Lopez's cell phone that was discovered in the minor's pocket.

## DISPOSITION

The order is affirmed.

GRIMES, J.

We concur:

BIGELOW, P. J.                    RUBIN, J.

10