Filed 12/22/15  P. v. Gamboa CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANTONIO GAMBOA,<br><br>    Defendant and Appellant. | F069190<br><br>(Super. Ct. No. BF149144A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush and Colette M. Humphrey, Judges.[†]

Kendall D. Wasley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Kane, Acting P.J., Detjen, J. and Smith, J.

[†]    Judge Bush presided over appellant's motion to suppress hearing.  Judge Humphrey sentenced appellant.

## INTRODUCTION

Appellant Antonio Gamboa pled no contest to grand theft, a felony (Pen. Code, § 487, subd. (c)). The prosecution dismissed charges against him for second-degree robbery (Pen. Code, § 212.5, subd. (c), count 1), criminal threats (Pen. Code, § 422, count 2), and drawing or exhibiting a firearm (Pen. Code, § 417, subd. (a)(1)(B), count 3). Appellant received a jail term of 16 months.

Appellant argues the trial court erroneously denied his Penal Code section 1538.5 motion to suppress because the protective sweep performed by law enforcement officers was not supported by reasonable suspicion. We agree and will reverse the order and remand for further proceedings.

## FACTUAL AND PROCEDURAL SUMMARY[1]

In May of 2013,[2] Monique Guerra and her mother, Susan Alvary, went to appellant's home at 5716 Walton Drive in Bakersfield, California, to retrieve personal property. An argument ensued between Guerra and appellant, during which appellant grabbed Guerra around the neck, pushed her against a pillar on the front patio, and forcibly removed a necklace from her neck. Appellant told Elizabeth Torres, his wife, to "get my strap," or firearm. Torres returned with a sawed-off shotgun and pointed it at Guerra and Alvary.

At approximately 6:30 p.m., Officers John Billdt, Ryan McWilliams, and Thomas[3] from the Bakersfield Police Department responded to the residence based on a report that a woman in a purple shirt had brandished a firearm. McWilliams spoke to Guerra and

---

[1] The statement of facts were derived from the reporter's transcript from the hearing on appellant's motion to suppress.

[2] The information and plea transcript indicate the incident occurred on May 26, 2013, but testimony elicited at the hearing indicates the incident occurred on May 27, 2013.

[3] Officer Thomas's first name was not included in the record on appeal.

2

Alvary outside the house, on the north end of the block. Guerra related the details of the incident to McWilliams and provided a description of appellant and Torres. As McWilliams was speaking with Alvary and Guerra, appellant and Torres came out of the home. Torres was wearing a purple shirt that matched the description of the woman with the firearm. Both appellant and Torres were detained.

Once additional officers arrived on scene, a protective sweep of the home was conducted. McWilliams stated that the sweep was performed because neither appellant nor Torres had a firearm on them when they were detained. He testified that he did not know whether there was an additional person inside the home, and that there could have been an additional female inside with a purple shirt, which represented a danger to the public. However, McWilliams also indicated that he had no knowledge that anybody else was involved in the incident.

During the sweep, officers could not gain access to a bedroom in the northwest portion of the home. Officers determined Scott McNally, who was on searchable probation, lived in the bedroom. Based on McNally's probation status, officers searched the common areas of the home. In one of the kitchen cabinets, they discovered a .22-caliber rifle.

Appellant filed a motion to suppress pursuant to Penal Code section 1538.5, arguing that the sweep was unlawful. The trial court held that the search was reasonable as a protective sweep and denied appellant's motion to suppress. In support of its decision, the court identified McWilliams's concern about someone having a gun inside the house, and the fact that appellant and Torres were not found to be in possession of the firearm initially reported to police.

**DISCUSSION**

*1.* *Protective Sweep*

The standard of review of a trial court's ruling on a motion to suppress is governed by well-established principles. (*People v. Ormonde* (2006) 143 Cal.App.4th 282, 290 (*Ormonde*).) When there is no controversy concerning the underlying facts, the only issue is whether the law, as applied to the facts, was violated. (*People v. Werner* (2012) 207 Cal.App.4th 1195, 1203 (*Werner*).) Thus, we defer to the trial court's factual findings and independently apply the requisite legal standard to the facts presented. (*People v. Celis* (2004) 33 Cal.4th 667, 679 (*Celis*).)

The Fourth Amendment to the federal Constitution and our state Constitution prohibit unreasonable searches and seizures. (*Maryland v. Buie* (1990) 494 U.S. 325, 331 (*Buie*); Cal. Const., art. I, § 13.) When determining reasonableness, a balance must be struck between the intrusion on an individual's Fourth Amendment rights and promoting legitimate governmental interests. (*Buie, supra*, 494 U.S. at p. 331.) A search of a home, for example, is generally unreasonable without a warrant supported by probable cause. (*Ibid.*) Nevertheless, because of the need to balance these competing interests, there are well-delineated exceptions where neither probable cause nor a warrant is required. (*Ibid.*) One such exception is the protective sweep.

A protective sweep is limited to a cursory visual inspection of spaces "where a person may be found." (*Buie*, *supra*, 494 U.S. at p. 335.) The purpose of a protective sweep is to protect officers from an immediate risk of harm at the site of an arrest. (*Id.* at p. 333 [analogizing the safety concerns of a protective sweep to those associated with a "frisk" as established in *Terry v. Ohio* (1968) 392 U.S. 1, or a search of a car for weapons in *Michigan v. Long* (1983) 463 U.S. 1032].) "[A]n in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.' An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings." (*Buie, supra,* 494 U.S. at p. 333.)

4

A protective sweep does not require probable cause, but is justified merely by a reasonable suspicion that the area to be swept harbors a dangerous person. (*Celis, supra,* 33 Cal.4th at p. 678.) However, a protective sweep cannot be based on an inchoate and unparticularized suspicion or a hunch. (*Buie, supra*, 494 U.S. at p. 332; *Celis, supra*, 33 Cal.4th at p. 678.) "Where an officer has no information about the presence of dangerous individuals, . . . courts have consistently refused to permit this lack of information to support a 'possibility' of peril justifying a sweep." (*People v. Ledesma* (2003) 106 Cal.App.4th 857, 866 (*Ledesma*).) The belief that an additional person *might* be present is insufficient to justify a protective sweep under *Buie*. (*U.S. v. Sunkett* (N.D.Ga. 2000) 95 F.Supp.2d 1367, 1372, 1380 [holding that a protective sweep was unreasonable where officers had knowledge weapons might be in a home but no reason to believe any other person was present].)

Here, McWilliams testified that as he interviewed Guerra and Alvary, he observed appellant and Torres exit the residence. Torres was wearing a purple shirt that matched the description of the person reported to be in possession of a firearm. As a result, both appellant and Torres were detained. McWilliams had no knowledge of whether anyone else was involved in the incident. He stated that his decision to conduct a protective sweep was based on the fact that appellant and Torres were not in possession of a firearm when they were detained. He did not know whether there was an additional person inside the home, and believed there could have been an additional female wearing a purple shirt, which represented a threat to public safety.

In *Celis, supra,* 33 Cal.4th at p. 672, officers detained the defendant and his accomplice outside his residence, which had been under surveillance for drug trafficking. The officers then entered the home to conduct a protective sweep based solely on one-day-old surveillance observations showing defendant's wife and a male juvenile in the house. (*Ibid.*) Officers found a box large enough to hold a person, which contained cocaine. (*Ibid.*) Our Supreme Court held that the facts known to the officers when they

entered the house fell short of a reasonable suspicion necessary to justify the sweep. (*Id.* at pp. 679-680.) The court reasoned that officers had no knowledge that anyone was inside the home on the day the defendant was detained, there was no indication that the suspects were armed, and the officers had no indication that house harbored a dangerous person. (*Id.* at p. 679.)

Similarly, in *Ormonde*, officers responding to a domestic violence call detained a suspect outside the defendant's apartment and conducted a protective sweep of the apartment. (*Ormonde, supra,* 143 Cal.App.4th at p. 287.) Although the officer had no reason to believe anyone was in the apartment, he conducted a sweep to ensure the safety of the officers based on a general concern about the dangerous nature of domestic violence calls. (*Id.* at p. 294.) The court held that a general apprehension of danger, based solely on the nature of the call, was not enough to amount to a reasonable suspicion that a potentially dangerous person was inside the apartment. (*Id.* at p. 295; see *Werner, supra,* 207 Cal.App.4th at p. 1209 [a mere abstract possibility that a dangerous person might be present is not enough to justify a protective sweep].)

Here, as in *Celis*, the facts known to officers prior to the protective sweep "fell short of what *Buie* requires, . . . reasonable suspicion that the area to be swept harbor[ed] a person posing a danger to officer safety." (*Celis*, *supra*, 33 Cal.4th at pp. 679-680.) While officers here had information that Torres was armed, unlike the officers in *Celis*, *Buie* requires "reasonable suspicion *both* that another person is in the premises *and* that that person is dangerous." (*Werner*, *supra*, 207 Cal.App.4th at p. 1206.) Further, as the *Ormonde* court held, a general apprehension of danger is insufficient to establish such reasonable suspicion. (*Ormonde, supra,* 143 Cal.App.4th at p. 295.)

McWilliams testified that when appellant and Torres exited the home, he had no knowledge that anybody else was involved in the incident. Although he testified there could have been an additional person wearing a purple shirt inside the home, he detained Torres because she matched the description of the person who brandished the firearm.

6

Thus, the belief that anyone else could have been inside the home was not based on specific facts known to officers, but rather, sheer speculation.

We recognize police officers unquestionably face danger in the performance of their duties and that protective searches serve to mitigate physical threats. However, as our Supreme Court recognized in *Celis*, "Society's interest in protecting police officers must . . . be balanced against the constitutionally protected interest of citizens to be free of unreasonable searches and seizures." (*Celis, supra,* 33 Cal.4th at p. 680.) Preventative searches, such as a protective sweep, are tested under the relatively relaxed standard of reasonable suspicion to ensure that when an officer is justified in believing danger exists, he or she is afforded the discretion to take appropriate measures to neutralize the risk of harm. (*Ledesma, supra*, 106 Cal.App.4th at p. 867.) No such objectively reasonable justification was established here.

We find that the protective sweep was not supported by the reasonable suspicion that an additional person might have been inside the home.

### 2. *Inevitable Discovery*

Respondent also asserts that even if the initial entry was illegal, the evidence should not be suppressed because it is admissible under the inevitable discovery exception. We reject this argument.

Under the inevitable discovery exception, evidence seized during an illegal search may be admissible if police would have discovered it through lawful means. (*People v. Robles* (2000) 23 Cal.4th 789, 800.) The burden is on the People to demonstrate that "due to a separate line of investigation, application of routine police procedures, or some other circumstance," illegally seized evidence would have been lawfully seized. (*People v. Hughston* (2008) 168 Cal.App.4th 1062, 1072.) Such a showing must be based upon "'historical facts capable of ready verification or impeachment,'" rather than speculation. (*Ibid.*)

In their response to appellant's motion to suppress, the People argued that the common areas of the home were lawfully searched pursuant to McNally's probation status. Plainly stated, the People argued that once officers crossed the threshold of the home, they were permitted to search common areas upon discovering McNally's searchable probation status.

An unlawful search of a parolee's residence cannot be justified where officers were unaware of the search condition at the time the search was conducted. (*People v. Sanders* (2003) 31 Cal.4th 318, 335.) Officers were not permitted to cross the threshold of the home without a warrant or an applicable exception to the warrant requirement, and as previously set forth, the protective sweep was unlawful.

Moreover, respondent's argument that McNally's probationary search status would have permitted officers to initially enter the home under the inevitable discovery exception was raised for the first time on appeal. No evidence exists from which we can conclude officers would have conducted a records check on all occupants, prior to entering the home, as a routine matter, especially on an occupant not present during, or connected to, the underlying incident. The record does not support appellant's contention that the firearm, and any other illegally seized evidence, *would* have been discovered by a lawful probation search, but only that it *could* have been.

Because a factual determination is required to ascertain whether officers would have, in fact, run a records check on McNally as a routine matter, prior to entering the residence, this argument is not reviewable on appeal. (*People v. Chapman* (1990) 224 Cal.App.3d 253, 259 [a new theory may only be raised on appeal when it does not require any additional factual determination, and the issue is strictly a question of law].)

Although officers reasonably believed that a dangerous weapon was inside the home, they did not have any objective facts indicating the presence of other people inside the home who might be a danger to officers or others at the scene. Moreover, it was not until after they unlawfully crossed the threshold that they discovered McNally was an

8

occupant and that he was on searchable probation. Thus, the search of appellant's home was unlawful, and all evidence seized as a result, including the firearm, must be suppressed.

### 3. *Recovery Fee*

Appellant also argues a revenue recovery fee in excess of $30 was improperly imposed against him. Respondent concedes the maximum allowable fee under the statute is $30 and that the $45 fee imposed should be reduced. We agree.

Penal Code section 1205, subdivision (e), authorizes a fee of no more than $30 to cover the clerical and administrative costs required to process a defendant's fine payments. The fine imposed against appellant pursuant to Penal Code section 1205 was in excess of $30. Thus, in the event appellant elects to withdraw his guilty plea, we order the trial court to reduce the fee to $30.

## DISPOSITION

The judgment is reversed and the cause is remanded to the superior court with directions to vacate the order denying the motion to suppress and enter a new order granting the motion, and to permit appellant to withdraw his guilty plea, should he decide to do so. [4]

If appellant elects not to withdraw his plea, the trial court is directed to reinstate the original judgment, with a modification striking the recovery fee of $45, and imposing a fee under Penal Code section 1205, subdivision (e) in the amount of $30.

---

[4] We note that even though the firearm and any other evidence seized pursuant to the unlawful search must be suppressed, other evidence exists which would support probable cause for the charges brought against appellant.