Filed 5/9/16  P. v. Parks CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C078496 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F07962) |
| v. | |
| JOSHUA PARKS, | |
| Defendant and Appellant. | |

After the trial court denied his motion to dismiss (Pen. Code, § 995), defendant Joshua Parks entered a plea of no contest to possession of methamphetamine for sale (Health & Saf. Code, § 11378).  The trial court suspended imposition of judgment and sentence, placed him on five years of formal probation, and ordered him to serve 180 days in county jail, less conduct credit.  It later issued defendant a certificate of probable cause to appeal.

On appeal, defendant argues the trial court erred in denying his motion to dismiss, because the evidence against him was the result of an illegal detention. He further maintains that the order of probation and the clerk's minute order do not accurately reflect the court's oral rendition of his sentence. The People concede much of the latter argument. We shall affirm both the order of probation and the clerk's minute order, as modified, with directions to issue an amended version of each.

## FACTUAL AND PROCEDURAL BACKGROUND

At the preliminary hearing, the magistrate (Hon. Maryanne G. Gilliard) concurrently heard defendant's motion to suppress. The facts relevant to the motion to dismiss are drawn from that hearing.

Near midnight on November 24, 2014, a Citrus Heights police officer was on patrol, driving down Devecchi Avenue (a street off Auburn Boulevard in the southwest corner of Citrus Heights). The officer was aware of the area's reputation for the use, possession, and sales of controlled substances. His attention was drawn to a Jeep Grand Cherokee parked in a gated driveway. It was close to a wooden fence on its passenger side that concealed the Jeep from view until the officer drove past the driveway. The officer had driven past this driveway before, and had never seen the gate opened or unlocked or any cars parked there. The street did not have any retail or commercial outlets that might be a destination for nonresidents.

The area was very dark. The officer could barely discern three occupants in the Jeep, who appeared to be scanning their surroundings. The officer stopped his car and backed up until it was behind the Jeep, the front of which was against the closed gate. The Jeep theoretically could have exited the driveway past the patrol car, but it would have required a multiple-point turn to do it. The officer trained one of his "alley lights" on the Jeep as he got out of the patrol car in order to see better. He did not turn on a siren or the emergency lights. As the officer approached the Jeep, a backseat passenger turned

2

to look at him, and then reached down to the seat next to him and to his waistband (which were outside the view of the officer). The officer quickly retreated to the shelter of the open driver's door of his patrol car. He shouted his identity as a police officer, and ordered the occupants several times to show their hands. The occupants in the front seat complied; the backseat occupant kept dropping his hands out of sight, apparently to his waist. The officer drew his gun and summoned assistance; the prosecutor did not dispute that at least by this point the encounter had ripened into a detention.

Defendant was the backseat occupant. There was a functioning digital scale on the backseat. As the officers removed defendant from the Jeep, a container fell out of his pants leg, which had three baggies of methamphetamine inside amounting to almost 15 grams collectively. Defendant—who was unemployed—had $147 in cash in his possession. Although the parties denied knowing each other, there were text messages setting up a meeting between defendant and one of the men in the front seat (who had $60 in his hand when the officer approached with reinforcements). While the officer noted that his records check of the occupants revealed that they were all on probation, he did not testify whether defendant's conditions of probation included a search provision and the prosecution did not urge this as a basis to uphold the search (for which reason the People abjure this as a basis to affirm the ruling on appeal (*People v. Chapman* (1990) 224 Cal.App.3d 253, 259 (*Chapman*) [new theory on appeal must be based on facts already in record], mooting a number of defendant's arguments).

Judge Gilliard denied the motion to suppress, finding reasonable cause for the officer to investigate the vehicle (noting it was a close question whether there was a detention of the Jeep before the officer drew his gun because the patrol car had not entirely blocked the driveway). Holding defendant to answer, she deemed the complaint to be the information.

3

Defendant renewed the issue of the legality of the warrantless search in his motion to dismiss filed with the trial court. The prosecution's opposition asserted only that the encounter was consensual.[1] The trial court (Hon. Benjamin G. Davidian) denied the motion on the ground that is was conceivable for the Jeep to have chosen to leave the driveway, even if it might have been "very difficult," and thus it was a consensual encounter.

After the trial court's ruling, a brief colloquy followed between counsel, and the parties announced a resolution of the matter. Defense counsel asserted that defendant agreed to plead no contest to possession for sale. In return, he would receive a 180-day jail sentence along with a five-year period of "regular . . . old-fashioned" probation with "standard conditions." In the calculation of defense counsel, defendant had 77 days of custody credit as of the date of the hearing on the motion to dismiss (Feb. 9, 2015).

In accepting defendant's plea, the court advised him of a requirement to register as a controlled substance offender. (Health & Saf. Code, § 11590.) It also told defendant he would be subject to a restitution fine of up to $10,000. After accepting his plea, the court sentenced defendant immediately at his request. As part of his sentence, the trial court imposed a $300 restitution fine (and stayed a fine imposed in the event of revocation of probation), a $40 "Criminal Conviction Assessment" and a $30 "Court Security Fee." It declined to "impose the other costs and fees." It then advised defendant that as a convicted felon he was subject to numerous prohibitions on his use, possession, or being in the presence of firearms and ammunition. The court directed its bailiff to provide defendant with "a Penal Code . . . Firearms Prohibition Packet," stating, "It's important

---

[1] For this reason, defendant suggests the People cannot assert any justification for a detention on appeal. However, this determination does not depend on additional facts, because the magistrate considered the issue at the time of the motion to suppress, and therefore it is proper to consider the argument on appeal. (*Chapman*, *supra*, 224 Cal.App.3d at p. 259.)

4

that you read that and that you comply with the terms and conditions in that packet for the remainder of your life." The court particularly urged defendant to consult with his probation officer about the rules for being in the company of people (other than peace officers) who have guns; "you've got to be very careful." It awarded 77 days of custody credit.

The trial court's written "Minute Order [and] Order of Probation" (hereafter Order of Probation), dated February 9, 2015, is six pages long. It subjected defendant on its fourth and fifth pages to various "General Conditions of probation as authorized by the provisions of the Probation Statutes of the State of California." It otherwise listed numerous special conditions of probation on pages 1 and 2 (among which were directives to register pursuant to statute as a drug offender and supply blood, saliva, and thumbprint exemplars in compliance with Penal Code sections 296 and 296.1, as well as several firearm prohibitions "as mandated in [Penal Code sections] 29800[, subdivision ](a) and 30305[, subdivision ](a)"). On pages 2 and 3, the Order of Probation listed the fines, fees, and assessments that the court imposed at the hearing, along with additional charges (generally with a caveat that each was a "court[-]ordered fee[,] not a condition of probation").[2] These included a laboratory fee of $50 (Health & Saf. Code, § 11372.5,

---

[2] The restitution fine by statute is a mandated condition of probation. (*People v. Hart* (1998) 65 Cal.App.4th 902, 905 [(Pen. Code, § 1202.4, subd. (m)].) By definition, the stayed probation revocation fine is not.

subd. (a))[3] and a drug program fee of $150 (Health & Saf. Code, § 11372.7).[4] The Order of Probation cited Penal Code section 1465.8, subdivision (a)(1) (for costs of court operations)[5] as authority for the $40 assessment imposed at sentencing and Government Code section 70373 (for costs of court facilities) as authority for the $30 assessment (neglecting to note the latter was not a condition of probation). Finally, the Order of Probation imposed a urinalysis testing fee of $25, but waived any probation-related costs or attorney fees. After noting all the above was "Done in open Court 02/09/2015," page 5 of the Order of Probation included a signature line for defendant to attest that all the terms and conditions had been explained to him, and a signature line for a witnessing "Officer." Both are blank.

Following the Order of Probation in the clerk's transcript is an additional six-page document that sets out specific and general conditions of probation (among which are the fines, fees, and assessments). Although the court did not discuss this document at the sentencing hearing, the Order of Probation indicates the court had read and considered a "presentence probation report" and "ordered it filed" at that hearing. A notation on a

---

[3] Attached to this fee were a state penalty assessment of $50 (Pen. Code, § 1464), a county penalty assessment of $35 (Gov. Code, § 76000), a "DNA Implementation Fee" of $5 (*id.*, § 76104.6), a "DNA Fee" of $5 (*id.*, § 76104.7 [actually to be assessed in the amount of *$4* for every $10 of the base fine]), a court construction fee of $25, apparently assessed at $5 for every $10 of the base fine (citing *id.*, § 70373 [assessment for court *facilities* of $30]; presumably meaning to cite *id*, § 70372 [penalty assessment to fund court construction]), and, finally, a "State Surcharge" of $10 (citing Pen. Code, § 1465.7 [state surcharge of 20 percent]).

[4] Also attached to this fee were the state penalty assessment ($150), the county penalty assessment ($105), the two DNA fees ($15 each, as well as a *second* DNA penalty fee of $30, which still does not total the 40 percent prescribed in the statute), the court construction fee ($75), the "Criminal Impact Fee" of $30, and a court operations assessment of $40 pursuant to Penal Code section 1465.8. As we make clear above, the oddities of these calculations are moot.

[5] This assessment originally was dedicated more narrowly to the costs of court security, and is often still described in such manner. (See Stats. 2003, ch. 159, § 25, p. 1676.)

stamped checklist imprinted on the docket for February 9, 2015—a page which is headed "Minute Order—Proceedings" (hereafter Clerk's Minute Order)—indicates the six-page document may be the report of the probation department, which the Clerk's Minute Order purports to incorporate. While counsel stated at the hearing that defendant's credit amounted to 77 days "and he will just serve the . . . remaining time," the clerk's stamped checklist granted 76 days of good-time/work-time credit in addition to defendant's 77 days of custody credit. The checklist also listed the $30 and $40 assessments, and directed the provision of DNA samples "PURS[UANT TO PEN. CODE, §] 296" without any indication this was a condition of probation. Finally, the checklist noted defendant had been "ADVISED" about firearms and received the information packet.

## DISCUSSION

### 1.0    There Was a Reasonable Basis to Detain the Jeep

Defendant contends the officer's approach amounted to a detention because based on the totality of the circumstances a reasonable person would not have felt free to leave. (*Michigan v. Chesternut* (1988) 486 U.S. 567, 569 [100 L.Ed.2d 565]; see *Florida v. Bostick* (1991) 501 U.S. 429, 434, 436 [115 L.Ed.2d 389].) From this premise, he asserts it was an illegal detention because the officer did not have reasonable and articulable suspicions to conduct it. (*Terry v. Ohio* (1968) 392 U.S. 1, 21-22 [20 L.Ed.2d 889].) The People by contrast assert this encounter was consensual, but in any event reasonable suspicions warranted a detention.

We will not belabor the question of whether the Jeep was detained at the point where the officer parked behind it, illuminated it with his alley lights, and walked up the driveway to make his observations of furtive behavior on defendant's part.[6] While the

---

[6] We do not need to discuss or distinguish the various authorities that the parties cite. "[I]t is generally unproductive to compare different cases on a question of fact such as this" that do not purport to establish a principle of law. (*DeVore v. Department of*

7

magistrate and the trial judge were preoccupied with the theoretical ability of the Jeep to drive away from the officer based on the positioning of the patrol car, neither of them considered the fact that the officer was walking up the remaining portion of the driveway, which would impede *any* movement on the part of the Jeep without striking the officer. Under these circumstances, no reasonable person could believe there was the ability to ignore the officer and depart. Even if there were any doubt of this conclusion, when the officer immediately thereafter retreated to his patrol car, announced his status as a police officer, and demanded that the individuals in the Jeep raise their hands, this certainly was a sufficient exercise of authority to constitute a seizure of the Jeep's occupants.

Nevertheless, the officer had objectively reasonable grounds to park, illuminate, and approach even before observing the furtive behavior. In addition to the factors of the location's reputation for activity related to controlled substances and the late hour, there was the absence of a reason for anyone who was not a resident to be present, the Jeep was parked in such a fashion as to conceal its presence from other vehicles driving from the main artery of Auburn Boulevard, and there had never been a vehicle present in this driveway on any other occasion. It may be that the Jeep's occupants could have been having lawful dealings with the occupants of the home associated with the driveway, or that the Jeep otherwise had a lawful purpose for being parked in the driveway. However, that is the whole point of an investigative detention: to resolve any ambiguity about suspicious-appearing conduct. Here, individuals were behaving in a suspicious manner giving rise to a reasonable suspicion of activity related to controlled substances. The officer was entitled to investigate. As a result, the trial court properly denied the motion to dismiss.

---

*California Highway Patrol* (2013) 221 Cal.App.4th 454, 463; cf. *People v. Rundle* (2008) 43 Cal.4th 76, 137-138 [on questions of evidentiary sufficiency, "comparisons between cases are of little value"].)

**2.0 The Order of Probation and Clerk's Minute Order Must Be Modified**

Presumably because sentencing was done immediately following defendant's plea, there are many shortcomings in the Order of Probation and the Clerk's Minute Order for the proceeding. The People properly concede most of these.

**2.1 Defendant Forfeited any Challenge to the General Conditions of Probation in the Order of Probation**

Defendant contends there was never any discussion at the hearing of the *substance* of the general conditions of probation included in the Order of Probation, nor does the written record reflect any advisement to him of their substance. However, defendant's counsel described them as "standard" and was a public defender presumably aware of the county's standard conditions; defendant was already a probationer at the time of his offense; defendant and defense counsel consulted before defendant entered his plea; and the Order of Probation noted the statutory bases for these conditions. Under these circumstances, if defendant in fact required any further explanation of the shorthand term "standard," he had a duty to request it. (*In re Frankie J.* (1988) 198 Cal.App.3d 1149, 1154.) His failure to ask counsel to object, or to request an explanation thus forfeits any claim on appeal that these general conditions do not reflect his understanding of his plea. As a result, the general conditions on pages 4 and 5 of the Order of Probation are valid.

Defendant also suggests the record fails to demonstrate that these written general conditions are the same "standard" conditions to which defense counsel referred. By the same token, the record fails to demonstrate that they are *not* the same. He has thus failed to satisfy his duty to provide a record demonstrating error affirmatively (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187), and we will not reverse an order based on mere conjecture (*People v. Ayala* (2000) 24 Cal.4th 243, 267).

### 2.2 The Special Conditions of Probation Referenced in the Order of Probation and the Clerk's Minute Order Are Invalid

In contrast with the general conditions of probation, neither the trial court nor the parties had any discussion about the inclusion of special conditions of probation beyond the legal consequences of defendant's conviction (registration, submitting exemplars, and the various prohibitions with respect to firearms and ammunition). The question thus arises of whether to give greater credence to the trial court's failure to impose these special conditions as part of its oral rendition of sentence, or to the inclusion of these special conditions in the Order of Probation and the Clerk's Minute Order. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.)

The People concede that the oral pronouncement has the greater credence. As in *People v. Pirali* (2013) 217 Cal.App.4th 1341, while it is not necessary to spell out the specific conditions of probation in detail where the record reflects a defendant is aware of them, if such conditions exist only in a written report that neither the trial court nor the defendant have signed and are not otherwise explicitly part of the recitation of sentence, this court "cannot find that the written conditions were meant to control and override the conditions imposed orally by the [trial] court" (*Pirali*, at p. 1346). We therefore strike them from the Order of Probation and from the Clerk's Minute Order. This moots defendant's claims regarding the imposition of these statutory duties as special conditions in the Order of Probation.

A cautionary note for defendant: Striking these special conditions in the Order of Probation does not extinguish his duties under the law with regard to registering as a drug offender, submitting biometric exemplars, or the firearms prohibitions applicable to all convicted felons. Moreover, he is still subject to the general condition of probation that requires him to obey all laws.

10

**2.3 The Six-page Document Containing Specific and General Conditions of Probation Is Not Properly Incorporated into the Order of Probation Through the Reference in the Clerk's Minute Order**

As the People concede, in open court neither the trial court nor counsel made any reference to the substance of this document containing specific and general conditions of probation, nor is there any indication defendant was familiar with it. Therefore, as with the special conditions contained in the Order of Probation itself, this document is a nullity, and the Clerk's Minute Order must be amended to omit any reference to it.

This moots defendant's claims regarding the imposition of these statutory duties as special conditions through the incorporation of this document in the Clerk's Minute Order. It also moots defendant's claims regarding fees, fines, or assessments listed in this document.

**2.4 Correction of the Fines, Fees, and Assessments Is Necessary**

As with an abstract of judgment, an order of probation must accurately reflect the sentence of the court regarding fines, fees, and assessments. (*People v. Eddards* (2008) 162 Cal.App.4th 712, 717-718.) If a trial court has failed to impose a mandatory fine, fee, or assessment, it is an unauthorized sentence that we are empowered to modify, with directions to issue a corrected order of probation. It is immaterial that these de minimus fines were not made explicitly part of the negotiated sentence where defendant was aware of the prospect that he could incur a restitution fine of up to $10,000. (*People v. Turner* (2002) 96 Cal.App.4th 1409, 1414-1415 (*Turner*).)

*2.4.1 Adding the Mandatory Laboratory Fee*

The mandatory laboratory fee and its mandatory associated assessments (*Turner*, *supra*, 96 Cal.App.4th at p. 1413) should have been part of the oral rendition of sentence. We will therefore modify defendant's sentence to include the following (correcting certain errors in the calculation in the trial court's written Order of Probation (see boldface)): a laboratory analysis fee of $50 (Health & Saf. Code, § 11372.5, subd. (a)), a

11

state penalty assessment of $50 (Pen. Code, § 1464), a *Sacramento* County penalty assessment of **$25** (Gov. Code, § 76000, subd. (e)), a DNA implementation fee of $5 (*id.*, § 76104.6), a DNA fee of **$20** (*id.*, § 76104.7), a courthouse construction fee of $25 (*id.*, **§ 70372**), and a state surcharge of $10 (Pen. Code, § 1465.7), amounting to $135, rather than $130 in penalties and assessments.

### 2.4.2 Removing the Drug Program Fee

As the People concede, the drug program fee contained in the Order of Probation is not mandatory. Therefore, the People have forfeited any challenge to the trial court's failure to impose it and its associated assessments in its oral sentencing of defendant. (*Turner*, *supra*, 96 Cal.App.4th at pp. 1413-1414, fn. 2.) As a result, these amounts are not properly part of the trial court's Order of Probation and shall be removed therefrom.

### 2.4.3 Removing Additional Assessments and Fees

The Order of Probation should reflect that neither the court operations assessment (Pen. Code, § 1465.8) nor the court facility assessment (Gov. Code, §70373) are being imposed as conditions of probation. (*People v. Kim* (2011) 193 Cal.App.4th 836, 842.) Moreover, the Order of Probation should not include the fee for urinalysis testing, as this is contrary to the trial court's decision not to impose any discretionary fees.

## 2.5    The Clerk's Minute Order Is Otherwise Correct

This leaves the matter of defendant's presentence credits. The People, without citation to any authority, assert we should strike the award of 76 days of conduct credit in the Clerk's Minute Order.

This would result in an unauthorized sentence. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647 [custody credit].) A trial court may reduce a defendant's conduct credit only where defendant has notice of this intention, and the prosecution has satisfied its burden of proof to show a basis for seeking the reduction. (*People v. Duesler* (1988) 203 Cal.App.3d 273, 277; *People v. Johnson* (1981) 120 Cal.App.3d 808, 815.) This

did not take place in the present case. The Clerk's Minute Order thus properly added the conduct credit.

To the extent defendant is asserting the Clerk's Minute Order improperly conditions his probation on his compliance with his duty to supply DNA samples and to report to the probation officer within 48 hours, nothing in the stamped checklist indicates that these directives are condition of probations. Moreover, as to the former, it is mandatory for a trial court to order compliance with such a statutory duty (*People v. Barriga* (1997) 54 Cal.App.4th 67, 70), while the latter contention is long moot.

## DISPOSITION

The Order of Probation and the Clerk's Minute Order are affirmed as modified. The trial court shall prepare and file both an amended Order of Probation and an amended Clerk's Minute Order, in accordance with the discussion in this opinion.


                  BUTZ           , J.


We concur:


     ROBIE         , Acting P. J.


     RENNER      , J.